## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25mj03269 Goodman

UNITED STATES OF AMERICA

v.

**AARON BROWN, RANIER LANDRY, and
ERIC CHASE,**

               **Defendants.**

_____/

FILED BY _____ *OG* _____ D.C.

**Jun 28, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2.  Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3.  Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4.  Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:  */s/ Michael E. Gilfarb*
     Michael E. Gilfarb
     Assistant United States Attorney
     Florida Bar No. 957836
     U.S. Attorney's Office-SDFL
     99 Northeast 4th Street, 8th Floor
     Miami, Florida 33132
     Telephone: (305) 961-9015
     E-mail: Michael.Gilfarb@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Aaron Brown, Ranier Landry, and<br>Eric Chase,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   25mj03269 Goodman

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 27, 2025_____ in the county of _____Miami-Dade_____ in the

___Southern___ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951 and 2<br>18 U.S.C. §§ 2119(1) and 2 | Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery<br>Carjacking |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Freddy Batista, Special Agent FBI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by   Face Time

Date:  6/28/2025

_____
*Judge's signature*

City and state:        Miami, Florida

Honorable Jonathan Goodman, Chief United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Freddy Batista, having first been duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, violations of federal law.

2.      I am employed as a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2018. I am presently a member of the FBI Miami Field Division Violent Crimes and Fugitive Task Force. My duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those found in Title 18 and Title 21 of the United States Code (U.S.C.). During my law enforcement career, I have participated in investigations which have resulted in the arrests, searches, and seizures of individuals and property. During my career with the FBI, I have used cooperating informants, undercover agents, pen register/trap and trace devices, video surveillance, wiretaps, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques. Prior to my employment as an FBI Special Agent, I worked as a police officer and Homicide detective for the City of Hialeah, Florida for 11 years. Based on my training and experience, I am familiar with methods used by criminals to further their criminal activities. I have also become familiar with violent crimes as it relates to narcotics trafficking.

3.      The information set forth in this affidavit is provided in support of a criminal complaint charging AARON BROWN, RANIER LANDRY, and ERIC CHASE, with Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery, in violation of Title 18, United States

Code, Sections 1951 and 2, and Carjacking, in violation of Title 18, United States Code, Sections 2119(1) and 2.

4.     The statements contained in this Affidavit are based upon my own personal knowledge, as well as information provided by other individuals, including other law enforcement officials, and from records obtained during the course of this investigation. This Affidavit is intended only to establish probable cause to believe that the offenses were committed. As such, it does not include each and every fact known to law enforcement about this investigation.

## PROBABLE CAUSE

5.     On June 27, 2025, the Federal Bureau of Investigation (FBI) responded to a business complex in the vicinity of 10893 NW 17 Street, Miami, Florida, ("Victim Business"), after receiving information of an armed robbery at a business in Sweetwater, Florida. The business primarily sells Apple products manufactured outside the state of Florida. Upon arrival, FBI Agents initiated an investigation to include victim and witness interviews, and a review of CCTV footage captured by the business and surrounding commercial spaces.

6.     The investigation revealed that on that same date, at approximately 10:48 a.m., a white GMC van (suspects' van) approached the business. Three masked individuals ("Subjects 1-3") wearing gloves exited the suspects' van and walked toward the main entrance of the business. The suspects' van remained occupied by at least one other individual and departed the vicinity. Any occupants in the subjects' van when it drove away remain at large. The subjects' van was recently recovered.

7.     Subjects 1-3 approached the business where they encountered a Victim 1 standing outside the main entrance. Subjects 1-3, each brandishing what appeared to be a firearm, forced

2

Victim 1 into the business and into the garage space.  Five other employees (Victims 2-6) were in garage.  The garage space stored a large amount of packaged Apple products.

8.      Video footage captured the following description of each subject:

a.      Subject 1 wore a grey hooded sweater under a black vest, dark pants, white sneakers with a Nike logo displayed on the side, orange gloves, multi-color boxers, and a white "Halloween Michael Myers" style mask. Subject 1 brandished what appeared to be a dark colored firearm.

b.      Subject 2 wore dark colored pants, a black long sleeve sweater over a white top covering something bulky, white colored sneakers with dark accents, and a white "Halloween Michael Myers" style mask. Subject 2 brandished what appeared to be a dark colored firearm.

c.      Subject 3 wore a light-colored shirt over a dark colored long sleeve sweatshirt, dark pants, white sneakers, and a white "Halloween Michael Myers" style mask. Subject 3 brandished what appeared to be a dark colored firearm.



9.      Inside the business, Subject 1 forced Victim 2 and 3 into the bathroom.  Subject 1 restrained Victim 2 and Victim 3's hands using black zip ties. Subject 1 re-entered the garage space and restrained the remaining victims' hands using black zip ties. Subject 1 and Subject 3 then escorted the remaining victims into the bathroom and closed the door. Subject 2 retrieved keys to a Mercedes Sprinter Van.  This vehicle is registered to the business (the business' van"). Subject 2 exited the business and entered the business' van that was parked outside. Meanwhile, inside the business, Subjects 1 and 3 began to compile packaged Apple products into a grey bedding sheet taken from inside the business. Some of these products recently arrived via Federal Express, which the business picked up and transported to the business via the business' van.

10.      At approximately 10:55 a.m., police sirens appear to have prompted Subject 1 and 3 to quickly leave the business, abandoning the packaged items they previously compiled. Subjects 1 and 3 ran to and entered the business' van already occupied by Subject 2. At this point in time, local law enforcement confronted Subjects 1-3.

11.      In the confrontation with Subject 1-3, local police discharged a firearm(s) at the subjects.  Subjects 1-3 left the scene in the business' van.  Law enforcement pursued the business' van.

12.      During the pursuit of the business' van, local law enforcement objects being discarded from the vehicle and some officers stopped to recover these items from middle of the roadway. Those items were a black police style vest and one white "Halloween Michael Myers" style mask, both consistent with the above photograph.  Investigation continues to determine whether the vest is a ballistic vest.

13.      The pursuit of the business' van continued until the vehicle became immobile in the vicinity of Medley, Florida after it drove off the side of the road between a canal and a road

barrier.   Another large vehicle blocked the business' van's forward movement, and law enforcement vehicles prevented rearward travel. Law enforcement took three individuals into custody at approximately 11:10 a.m.

14.    Law enforcement observed two additional black police style vests and white "Halloween Michael Myers" style masks, both consistent with the above photograph. Investigation continues into whether the vests are ballistic vests. There were two "airsoft" guns in the car as well.

15.    The driver of the business' van, Eric CHASE, informed officers he had a gunshot wound to his leg. Emergency Medical Services responded to treat CHASE and a passenger, Ranier LANDRY, after LANDRY complained of an injury. Responders cut off LANDRY's pants on scene. They later transported CHASE and LANDRY to a hospital.

16.    The third occupant, Aaron BROWN remained in custody on scene until he was transported for processing. BROWN was wearing a grey colored hooded sweater over a black tee shirts, black pants, white Nike sneakers with a dark colored Nike check, and neon green and black under pants.  Law enforcement sought to question BROWN, but he invoked his right to counsel. BROWN is Subject 1 according to the clothing description as seen on the business' video.

17.    The hospital discharged LANDRY, and law enforcement transported LANDRY for processing and questioning. At this time, LANDRY was wearing a hospital gown, black shorts over black Nike underpants, and white Puma sneakers with dark accents. Law enforcement seized some additional clothing. Law enforcement sought to question LANDRY, but he invoked his right to counsel.  LANDRY is Subject 2 according to the clothing description as seen on the business' video.

18.     CHASE is currently still in the hospital.  He is herein identified as Subject 3 by process of elimination.

19.     The FBI Evidence Response Team (ERT) processed the business and documented approximately one hundred and seventy (170) assorted Apple products placed within the sheet used by Subjects 1 and 3 previously mentioned. ERT also documented and collected a black "airsoft" firearm located on the ground just outside of the business in the vicinity of where the business' van was parked and where the police involved shooting occurred.

20.     Victim interviews were consistent with what video surveillance footage captured. The victims believed that the firearms CHASE, LANDRY, and BROWN brandished were real firearms, and they complied out of fear and threat of use of force or violence, or fear of injury. Victim 3 stated she observed Subject 1's face when he briefly removed his masked after zip tying her hands.  Victim 3 described him as a black male with facial hair. Victim 3 also stated Subject 1 wore what appeared to be green underwear with a dotted pattern.  Subject 1's (BROWN) post-arrest clothing included neon green underwear (see below photographs).




(Crime in Progress)                    (Post-Arrest)

6

21.     In addition to the items in the business' van previously mentioned, police recovered a cellular telephone and identification, both belonging to Victim 3. Business employees use their cellular telephones to conduct business in furtherance of the business' activity.

22.     Further investigation revealed that on June 25, 2025, CHASE and BROWN boarded the same American Airlines flight from San Francisco International Airport (SFO) to Miami International Airport (MIA). On the same day, June 25, 2025, LANDRY boarded a United Airlines flight from SFO to MIA. All three individuals arrived in Miami, Florida on the same day two days before the armed robbery took place.

23.     The Apple products mentioned herein traveled in or affected interstate or foreign commerce. The business operated in, and received and sold products affecting, interstate or foreign commerce, which was affected as a result of having to shutter during the events described herein and for a period of time thereafter. The retail value of the items in the sheet was approximately $170,000. The retail value of the items that arrived to business after Federal Express delivery was approximately between $700,000 and $800,000.

[remainder of page intentionally left blank]

## CONCLUSION

24.    Based on the aforementioned information, I respectfully submit that there is probable cause to believe that on or about June 27, 2025, BROWN, LANDRY and CHASE, did knowingly commit the offenses Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery, in violation of Title 18, United States Code, Sections 1951 and 2, and Carjacking, in violation of Title 18, United States Code, Sections 2119(1) and 2.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
FREDDY BATISTA
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1
by Face Time this  28th  day of June 2025.

_____
HONORABLE JONATHAN GOODMAN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

8